UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALAN JENKINS, ) | |
| ) | |
| Petitioner, ) | |
| vs. ) | Case No. 1:15-cv-2040-WTL-MPB |
| ) | |
| DUSHAN ZATECKY, Superintendent, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

For the reasons explained in this Entry, the petition of Alan Jenkins for a writ of habeas corpus must be **denied** and the action will be dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

**I. The Petition for Writ of Habeas Corpus**

**A. Background**

Jenkins was convicted in Johnson County of two counts of child molesting, each as a Class A felony, and was found to be a habitual offender. The Indiana Court of Appeals provided the following recitation of facts in Jenkins' appeal from the partial denial of post-conviction relief:

> In the winter of 2002, Jenkins's sister, S.P, and her twelve-year-old daughter, G.P., moved in with Jenkins. During the following two to three months, Jenkins's relationship with G.P. changed from an "uncle/niece relationship," to being friends, and then to a "boyfriend/girlfriend relationship." *Trial Tr.* at 675-76 [footnote omitted]. Jenkins and G.P., who was in sixth grade at the time, regularly engaged in sexual intercourse and oral sex, activities that were often accompanied by alcohol and drug use. G.P. would steal liquor and cigarettes from drugstores, and Jenkins would sometimes drive her to the stores. The two spent a great deal of time together, often because G.P. was skipping school. At some point, the two "started doing 'crack' together." *Id.* at 587.

From December 2002 through August 2003, Jenkins, S.P., and G.P. lived in various apartments, and on August 25, 2003, all three moved into a home located on East Main Street in Greenwood, Johnson County, Indiana. G.P. remained in that home until December 11, 2003, when she was taken into custody by Juvenile Probation for having violated her probation for truancy. Immediately after being taken into custody, G.P. failed a mandatory drug screen, by testing positive for cocaine, marijuana, and alcohol. This, among other factors, resulted in G.P. being placed into Fresh Start, a placement home for juveniles who have been removed from their home and placed into the care of a state agency.

In February 2004, Court Appointed Special Advocate ("CASA") Roger York investigated G.P.'s case and filed a report with the trial court regarding his findings. CASA York reported that he had met with S.P., Jenkins, and their mother, Beverly Jenkins ("Beverly") at the East Main Street home. During his visit, CASA York told G.P.'s family that there could be no drugs or alcohol in the home. When S.P. interrupted to ask when G.P. would be allowed to come home, the CASA explained that G.P. would have to complete her alcohol abuse program. *PCR App*. at 261. S.P. said that she understood; however, Jenkins "kept objecting and at one point accused the Court of kidnapping [G.P]." *Id*. "Beverly said that she had seen this coming for a long time and she indicated that there was something wrong with [Jenkins]." *Id*. Meanwhile, during fresh Start counseling sessions, G.P. provided counselors with the names of men with whom she claimed to be sexually active.

As part of the his [sic] report, CASA York reported that he called Johnson County Probation Officer Shannon Chambers ("Chambers") and Office of Family Services Case Manager Deborah Anderson ("Anderson")[footnote omitted] and "expressed concerns about [Jenkins]." *Id*. CASA York did not expressly state the nature of his concerns. Both Chambers and Anderson indicated that they also had concerns, and Fresh Start was alerted to the concerns. Within a few weeks, G.P. admitted to Fresh Start employees that it was her uncle, Jenkins, with whom she was engaging in oral sex and sexual intercourse and that he, in part, "controlled her by hooking her on cocaine." *Id*. at 261.

Detective Patti Cummings, of the Greenwood Police Department, was the lead investigator and first became involved in the investigation in early February 2004. On February 17, 2004, the State charged Jenkins with three counts of child molesting, each as a Class A felony; in March 2004, the State added the charge of contributing to the delinquency of a minor as a Class A misdemeanor and alleged that Jenkins was a habitual offender. Jenkins initially requested that the DNA found at the scene, which implicated him, be retested. However, upon learning that the retesting would not be completed until after the deadline for his speedy trial, Jenkins chose to abandon the retesting and pursue his right to a speedy trial. Attorney James Dunn ("Dunn") was initially appointed as Jenkins's public defender, but was relieved of his appointment when other commitments interfered with Jenkins's request for a speedy trial. John P. Wilson ("Wilson") accepted the appointment as Jenkins's new public defender and entered an appearance at a hearing on April 5, 2004. The jury trial commenced about twenty-eight days later. Wilson served as Jenkins's counsel during the jury trial and through sentencing.

Jenkins's trial commenced in Judge Kevin Barton's courtroom on May 3, 2004 and ran through May 11, 2004. The jury found Jenkins guilty of two counts of Class A felony child molesting—one for engaging in sexual intercourse with G.P. and one for receiving oral sex from G.P.—and determined he was a habitual offender. The jury, however, acquitted Jenkins of one count of Class A felony child molesting, for providing oral sex to G.P., and of Class A misdemeanor contributing to the delinquency of a minor. The trial court entered judgment of conviction on the jury verdicts and sentenced Jenkins to two enhanced thirty-five-year terms for the child molesting and another thirty-year term for being a habitual offender, all to be served consecutively, for an aggregate sentence of 100 years.

Attorney Charles Gantz ("Gantz") served as Jenkins's appellate counsel, raising only a sentencing issue on direct appeal. A panel of this court affirmed Jenkins's sentence in an unpublished memorandum decision; however the case was remanded for the trial court to link the habitual offender status to one of the felony convictions. *Jenkins v. State*, No. 41A01-0502-FA-1, slip op. at 1-6 (Ind.Ct.App. June 28, 2005). An amended sentencing order was entered on August 24, 2005.

Acting pro se, Jenkins filed a Verified Petition for Post-Conviction Relief on February 8, 2006, alleging that he was denied the effective assistance of both trial and appellate counsel. On March 17, 2006, the appointed public defender filed a notice of "present inability to investigate". *PCR App*. at 97. Jenkins asked that [sic] the PCR court to "stay all proceedings in this case until such time as counsel is ready to proceed." *Id*. By order dated April 6, 2006, the PCR court granted Jenkins's request, stating the "matter be set for hearing when Petitioner's counsel notifies the court of her ability to proceed." *Id*. Jenkins's counsel never notified the PCR court; instead, she obtained the court's permission to withdraw from the case on July 1, 2008. This triggered the PCR court to set the post-conviction petition for a hearing on September 18, 2008.

On three occasions in 2009, the PCR court granted Jenkins a continuance and reset the hearing. When Jenkins requested a fourth continuance, the PCR court vacated the scheduled hearing, noting that the hearing would be reset after Jenkins had completed legal research and discovery. PCR App. at 98. No entries were made on the CCS from December 7, 2009 until March 3, 2011, at which time Jenkins informed the PCR court that he was still not ready to proceed with a hearing.

On February 2, 2012, Jenkins requested public funds to obtain independent DNA testing and to hire an expert witness; the PCR court denied the request and also denied Jenkins's motion to certify that order for interlocutory appeal. On June 22, 2012, Jenkins filed an unverified motion to amend his PCR petition in part. An evidentiary hearing began on November 28, 2012, with Judge Barton again presiding. Trial counsel Wilson, G.P., and two other witnesses testified as witnesses for Jenkins; however, when time ran short, the PCR court ordered the hearing be reconvened on February 21, 2013. Later, the hearing was reset to May 29, 2013, due to a congested court calendar. On that day, Jenkins called seven witnesses, including his mother, his sister-in-law, Probation Officer Chambers, appellate attorney Gantz, Wilson, and G.P.; however, upon discovering that Jenkins's witness, Case Manager Anderson, had not been subpoenaed, the PCR court retained a private investigator to locate and serve Anderson. Once Anderson was located,

>the hearing was rescheduled for September 17, 2013, and was concluded that same day.
>
>Following the three-day evidentiary hearing, the PCR court denied Jenkins's PCR petition, finding that both trial counsel and appellate counsel provided effective assistance of counsel and that the affirmative defense of laches barred relief to Jenkins as to the underlying convictions.

*Jenkins v. State*, 41 N.E.3d 306, *1-5 (Ind.Ct.App. October 14, 2015). The Indiana Court of Appeals rejected Jenkins' challenges in that appeal—challenges to the representation he received both at trial and in his direct appeal. These challenges are renewed in the present action for habeas corpus relief.

### B. Jenkins' Claims

In the appeal just referenced, Jenkins claims that his trial counsel was ineffective for failing to:

(a) Depose or subpoena CASA Roger York;

(b) Question witnesses about other people G.P. engaged in sexual conduct with;

(c) Question G.P. about how she was positioned on the orange recliner during vaginal intercourse;

(d) Investigate whether G.P. had been coached by the State;

(e) Personally investigate the crime scene;

(f) Have DNA retested and presenting an expert;

(g) Present the testimony of Jenkins's mother and sister-in-law;

(h) Strike jurors;

(i) Act as counsel guaranteed by the Sixth Amendment;

(j) Have G.P. physically or psychologically examined;

(k) Object to prosecutor's closing argument; and

(l) Ensure better acoustics for recording the trial in the courtroom.

Jenkins also claimed that his appellate counsel was ineffective for failing to raise these same asserted errors of trial counsel in the direct appeal. These claims were rejected. Jenkins sought review by the Indiana Supreme Court, fairly presenting four specifications of asserted trial counsel ineffectiveness—specifications (a), (b), (h) and (i). The Indiana Supreme Court denied transfer on December 7, 2015.

Jenkins then filed this action seeking a writ of habeas corpus. He asserts ineffective assistance of trial counsel as in specifications (a), (f), (h), (i), (j) and (k) above. He also asserts the ineffectiveness of counsel in his direct appeal.

### C. Habeas Framework

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)).

> When a habeas petitioner's claim was "adjudicated on the merits in State court proceedings," section 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court may grant a writ of habeas corpus only if: (1) the state court's adjudication of the claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1), or (2) the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

*Cheeks v. Gaetz,* 571 F.3d 680, 684 (7th Cir. 2009). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Cullen v. Pinholster,* 563 U.S. 170, 183 n.3 (2011) (criticizing the dissent for failing to "take seriously" the Antiterrorism and Effective Death Penalty Act's (AEDPA) "*requirement* that federal courts defer to state-court decisions") (emphasis added); *Woodford v.*

*Visciotti,* 537 U.S. 19, 24 (2002) (noting that AEDPA's "highly deferential standard for evaluating state-court rulings . . . *demands* that state-court decisions be given the benefit of the doubt") (quotation marks omitted) (emphasis added). Also, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010). As one court has explained, "[i]t is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone,* 967 F.Supp. 152, 156 (E.D.Va. 1997).

In addition to the substantive standard recited above, "[i]t is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). "[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits. . . ." *Bell v. Cone,* 543 U.S. 447, 451 n.3 (2005). "Fair presentment contemplates that both the operative facts and the controlling legal principles must be submitted to the state court." *Malone v. Walls,* 538 F.3d 744, 753 (7th Cir. 2008).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual

prejudice infecting the "entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

### D. Applicable Law

The Sixth Amendment entitles criminal defendants to the effective assistance of counsel– that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms. *Bobby v. Van Hook,* 130 S. Ct. 13, 16 (2009). The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington,* 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Id.* For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.,* at 687.

With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). In determining whether counsel's performance was constitutionally deficient, the Court's review of counsel's performance is highly deferential, and the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Davis v. Lambert,* 388 F.3d 1052, 1059 (7th Cir. 2004). With respect to the prejudice requirement, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland,* 466 U.S. at 694; *see also Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004).

When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009)(internal citations and quotations omitted).

The Seventh Circuit Court of Appeals has expressed the operation of AEDPA deference in these terms:

> The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one: we have stated on prior occasion that "'*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001) (quoting *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997)), because "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) (emphasis added). Accordingly, this Court *is obligated to affirm the district court's decision to deny the writ, so long as the Wisconsin Court of Appeals "t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions."* *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

*Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003).

Contending that there were circumstances which actually resulted in the *deprivation* of representation, Jenkins presents a second category of ineffective assistance of counsel specifications under the holding in *United States v. Cronic,* 466 U.S. 648 (1984). In *Cronic*, decided the same day as *Strickland,* the Supreme Court held that there are situations where the ineffectiveness of counsel "is properly presumed without inquiry into actual performance at trial." *Id.* at 661. A presumption of prejudice is appropriate where (1) the accused is denied counsel at a

critical stage of the trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is small under the circumstances. *Id.* at 659–60; *Bell v. Cone,* 535 U.S. 685, 695–96 (2002). The Supreme Court has described *Cronic* as a "narrow exception" to *Strickland* that should be applied "infrequently." *Florida v. Nixon,* 543 U.S. 175, 190 (2004). To successfully invoke the presumption of prejudice, counsel's "failure must be complete." *Wright v. Van Patten,* 552 U.S. 120, 124 n.1 (2008); *Bell,* 535 U.S. at 697; *Smith v. Brown*, 764 F.3d 790, 796 (7th Cir. 2014). It has been held that *Cronic* describes merely a subset within the universe of *Strickland* claims that includes "the most extreme instances of lawyerly incompetence." *Barrow v. Uchtman,* 398 F.3d 597, 603 n.4 (7th Cir. 2005). By the same token, however, the difference between a *Strickland* claim and a *Cronic* claim "is not of degree but of kind." *Bell,* 535 U.S. at 697. Jenkins presented his *Cronic* claim to the Indiana state courts based on the third *Cronic* exception. The third *Cronic* exception applies where "counsel [was] called upon to render assistance under circumstances where competent counsel very likely could not." *Bell,* 535 U.S. at 696.

### E. Discussion

Although ineffective assistance of counsel is a single ground for relief, *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005)("ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed"), a petitioner must raise the particular factual basis for each aspect of the alleged ineffective assistance in order to preserve the respective argument. *Pole v. Randolph*, 570 F.3d 922, 934-35 (7th Cir. 2009). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default"; a petitioner "must have identified the specific acts or omissions of counsel that form the basis for" the claim of

ineffective assistance. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (internal quotation marks and brackets omitted). Additionally, the Court must "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight," *Ebert v. Gaetz,* 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore,* 131 S. Ct. 733, 741 (2011). "[C]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer,* 589 F.3d 353, 355–56 (7th Cir. 2009) (citation omitted).

Several specifications of ineffective assistance of counsel were presented in the post-conviction relief action, and several are also presented here. The first step in this case is thus to determine which of the ineffective assistance of counsel specifications in Jenkins' habeas petition have been fully and fairly presented to the Indiana state courts. The specifications which are renewed here are those identified previously as specifications (a), (f), (h), (i), (j) and (k) above. The specifications which were fairly presented to the Indiana Supreme Court are specifications (a), (h) and (i) above. Consequently, the specifications which are both presented here and which were presented to the Indiana Supreme Court are specifications (a), (h) and (i). These are the specifications that Jenkins' attorney at trial was ineffective by failing to: (a) depose or subpoena CASA Roger York; (h) strike prospective jurors; and (i) act as counsel guaranteed by the Sixth Amendment. Jenkins has committed procedural default as to other claims. His defaulted claim includes the claim that he was denied the effective assistance of counsel in his direct appeal.

With respect to specifications (a) and (h), the Indiana Court of Appeals recognized the controlling Supreme Court authority of *Strickland*. *Jenkins v. State*, 41 N.E.3d 306, *4. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" *Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted) (quoting *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694)). The Indiana Court of Appeals then assessed the specifics of this claim:

> Jenkins asserts that Wilson was ineffective when he failed to depose or subpoena CASA York and Detective Cummings. Jenkins contends that CASA York was the heart of the case; specifically, he was the one who, in his CASA report, first stated that he had concerns about Jenkins. In the absence of CASA York sharing his concerns with Chambers and Anderson, Jenkins would never have been included in the investigation that resulted in charges being filed against him. *Appellant's Br.* at 7. The State responds that trial counsel made a reasonable strategic decision not to further investigate or present testimony from CASA York because CASA York did not make "accusations of criminal conduct against Jenkins." *Appellee's Br.* at 15. The PCR court agreed with the State.
>
> During the PCR evidentiary hearing, Wilson testified that "Roger York was not the 'accuser' of Mr. Jenkins," but rather, he "authored a CASA report that he took information on." *PCR App.* at 36 (citing *PCR Tr.* at 104). The PCR court noted that the CASA report did not indicate that CASA York initiated the investigation of Jenkins, nor did it state that CASA York contacted Corley and Anderson to report concerns about molestation. *Id.* From this, the PCR court concluded, "Mr. Jenkins has failed to show how Mr. Wilson's failure to call Mr. York, who had expressed concerns about Mr. Jenkins, would have benefitted the case." *Id.* at 37. The PCR court's findings as to this claim were supported by the record and are sufficient to support a finding that Wilson was not ineffective.

*Jenkins v. State*, 41 N.E.3d 306, *4.

Jenkins also presents the argument that Wilson was ineffective in permitting a potentially possibly biased juror to be selected. This claim is self-evidently tentative and weak. The Indiana Court of Appeals discussed this claim in the following terms:

> On appeal Jenkins argues that the missing language was material. Specifically, he argues that the record supports a finding that he did not have an impartial jury. Jenkins alleges that he was prejudiced because a biased potential juror, who stated that he would give greater weight to the testimony of a known officer, may have been selected as a juror; however, Jenkins could not know with certainty who was chosen because "inaudible" was transcribed in the place of the juror's name. *Trial Tr.* at 125. Our review of the record before us reveals that Wilson engaged in extensive voir dire and thoroughly questioned potential jurors to root out any bias

> they might have against Jenkins. Moreover, Jenkins has not met his burden of proving that he was prejudiced by his inability to second guess Wilson's selection of jury members, especially under circumstances where the jury acquitted Jenkins of one count of Class A felony child molesting and one count of Class A misdemeanor contributing to the delinquency of a minor. The PCR court concluded that Wilson provided effective assistance of counsel. Jenkins has presented no evidence that leads this court to come to a different conclusion.

*Id.* at *11.

"Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam). Because the Indiana Court of Appeals' treatment of the above *Strickland*-based specifications of ineffective assistance of counsel at trial was reasonable, Jenkins is not entitled to habeas relief as to this claim.

The Indiana Court of Appeals also recognized the distinct analysis which is warranted under *Cronic*. *Jenkins v. State*, 41 N.E.3d 306, *5. It noted that the focus in Jenkins' appeal was on the third scenario from *Cronic* and that such a petitioner "'faces an extremely heavy burden in making his *Cronic* claims." *Id.* at *6 (quoting *Ward v. State,* 969 N.E.2d 46, 77 (Ind. 2012)). The Indiana Court of Appeals proceeded to explain why Jenkins' *Cronic* argument was unavailing:

> The PCR court found that Wilson is, and in 2004 was, an experienced attorney. *PCR App.* at 20. Since 1988, Wilson "provided criminal defense, mostly on felony cases." *Id.* Wilson: (1) had maintained a public defender contract with Johnson County since 1988, at least fifteen years prior to his representation of Jenkins; (2) had tried upwards of 100 criminal trials; and (3) handled several hundred criminal cases a year. *Id.* Additionally, Wilson was appointed as Jenkins's counsel more than twenty-five days prior to trial. This case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel. *Cronic,* 466 U.S. at 666. Accordingly, Jenkins has not met his burden of proving that Wilson provided ineffective assistance of trial counsel pursuant to the *Cronic* standard.

The foregoing explains precisely what is attributed to the circumstances surround Wilson's appointment and his representation of Jenkins at trial: "This case is not one in which the

surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel." The representation Wilson provided demonstrates just the contrary.

As the foregoing shows, and as to both *Strickland* and *Cronic,* the Indiana Court of Appeals in *Jenkins* "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Because this Court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* or *Cronic* standards] to the facts of the case," Jenkins' claim of ineffective assistance of counsel at trial does not support the award of habeas corpus relief. *Murrell,* 332 F.3d at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

### F. Conclusion

Jenkins' conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994).[1]

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). This Court has carefully reviewed the state record in light of Jenkins' claims and has given such consideration to that claim as the limited scope of its review in a habeas corpus proceeding permits. Several specifications of ineffective assistance of counsel are unreviewable here because of unexcused procedural default. The other specifications are completely lacking in merit. These claim of ineffective assistance of counsel at trial does not warrant relief in light of the deferential

---

[1]Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 468 (1938)).

standard required by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016)("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.")(citing *Harrington,* 562 U.S. at 98).

Jenkins' petition for a writ of habeas is therefore **denied.** Judgment consistent with this Entry shall now issue.

## II. Certificate of Appealability

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases*, the Court finds that Jenkins has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: 1/10/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Distribution:

Electronically Registered Counsel

ALAN W. JENKINS
870097
Pendleton Correctional Facility
Electronic Service Participant – Court Only